IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

RAYNARD R. JACKSON,

                          Plaintiff,                           OPINION AND ORDER

    v.

                                                   18-cv-237-wmc

STACEY HOEM, JAMES BOLSEN,
DAN SUTTERS, MICHAEL COCROFT,
TIMOTHY JONES, DANE ESSER,
DARRYL FLANNERY, and BETH EDGE,

                          Defendants.

---

       *Pro se* plaintiff Raynard Jackson is proceeding in this lawsuit against defendants, all of whom are employees of the Wisconsin Department of Corrections ("DOC") at its Secure Program Facility ("WSPF").  Specifically, Raynard was granted leave to proceed against defendants on Eighth and Fourteenth Amendment claims arising out of the conditions of his confinement at WSPF between May 22 and 28, 2013.  Currently before the court are defendants' motion for partial summary judgment on the ground that Jackson failed to exhaust his administrative remedies with respect to some of his claims (dkt. #41), as well as Jackson's motion for sanctions (dkt. #49).  For the reasons that follow, the court will grant defendants' motion in part and deny it in part, and deny plaintiff's motion.

OPINION

I.     **Defendants' Exhaustion Motion**

       Under 42 U.S.C. § 1997e(a), "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined

in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." Generally, to comply with § 1997e(a), a prisoner must not only assert a claim at the relevant prison, but also "properly take each step within the administrative process" that are "in the place . . . at the time, [as] the [prison's] administrative rules require," *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002), including (1) compliance with instructions for filing the initial grievance, *Cannon v. Washington*, 418 F.3d 714, 718 (7th Cir. 2005), and (2) filing all available appeals, *Burrell v. Powers*, 431 F.3d 282, 284-85 (7th Cir. 2005).

The purpose of this exhaustion requirement is to give the prison administrators a fair opportunity to resolve the grievance without litigation. *Woodford v. Ngo*, 548 U.S. 81, 88-89 (2006). If a prisoner fails to exhaust all administrative remedies before filing his lawsuit, then this court must dismiss the claim. *Perez v. Wisconsin Dept. of Corr.*, 182 F.3d 532, 535 (7th Cir. 1999). Because exhaustion is an affirmative defense, however, *defendants* bear the burden of establishing that plaintiff failed to exhaust, *Jones v. Bock*, 549 U.S. 199, 216 (2007), and "once a prison has received notice of, and an opportunity to correct, a problem, the prisoner has satisfied the purpose of the exhaustion requirement." *Turley v. Rednour*, 729 F.3d 645, 650 (7th Cir. 2013).

In Wisconsin, prisoners start the complaint process by filing an inmate complaint with the institution complaint examiner ("ICE") within 14 days after the occurrence giving rise to the complaint. Wis. Admin. Code § DOC 310.0(6).[1] The complaint must "clearly

---

[1] On April 1, 2018, a new version of Wis. Admin. Code § DOC ch.310 went into effect. For purposes of this case, however, the court refers to the December 2014 version of Wis. Admin. Code ch. DOC 310, which was in effect when plaintiff's claims arose.

identify the issue" that the inmate seeks to raise. *Id.* § 310.09(1)(e). If ICE rejects a complaint under § 310.11(5), then the inmate may appeal the rejected complaint to the appropriate reviewing authority within ten days. *Id.* § 310.11(6). If the offender complaint is not rejected, ICE will make a recommendation to the reviewing authority. *Id.* §§ 310.11(1)-(4). The offender complaint is then decided by the appropriate reviewing authority, whose decision -- if adverse to the inmate -- can be appealed to the Corrections Complaint Examiner ("CCE"). §§ 310.12, 310.13. Absent good cause, an appeal to the CCE must also be made within ten days of an adverse ruling. § 310.13(1)-(2). The CCE next makes a recommendation to the DOC Secretary, who takes final action. §§ 310.13(6), 310.14.

The court granted Jackson leave to proceed on the following, specific conditions he allegedly endured between May 22 and 27, 2013, while placed in an observation status cell that lacked running water:

- Eighth Amendment claims against defendants Stacey Hoem, James Boisen, Daniel Suthers, Michael Cockroft, Timothy Jones, Dane Esser, and Beth Edge, for refusing to take corrective action despite knowing that: Jackson had no running water; his cell was covered in another inmate's feces; and it contained remnants of incapacitating agents, for which he had a specific medical contraindication.

- Eighth Amendment claims against defendants Cockroft, Jones, and Edge, for failing to provide Jackson his inhaler and nasal spray. In particular, plaintiff alleged that even though he asked for it and reported chest pains, (1)

3

Cockroft and Jones denied him those items on May 22, and (2) Edge denied

him his inhaler on May 24.

- Eighth Amendment claim against defendant Esser for refusing Jackson access to medical attention for his dehydration and related symptoms.

- Eighth Amendment claim against defendant Daryl Flannery for his failure to provide Jackson medical treatment on May 27, 2013, despite his reported dehydration-related symptoms.

- Fourteenth Amendment, class-of-one claims against defendants Hoem, Boisen, Suthers, Cockroft, Jones, Esser, and Edge, for singling Jackson out for mistreatment as the only inmate without access to running water and medical care.

(2/11/2020 Order (dkt. #29).)

Defendants seek partial summary judgment on exhaustion grounds with respect to Jackson's claims that: (1) his cell contained another inmate's feces and incapacitating agents; (2) he was refused access to his inhaler or nasal spray; (3) he was singled out for mistreatment; and (4) defendants Hoem, Boisen, Suthers, Cockroft, Jones and Edge denied him access to running water.  More specifically, defendants argue that none of the five inmate complaints Jackson pursued before bringing this lawsuit adequately alerted prison officials to those claims.  The following is an overview of those five inmate complaints, and how they were processed:

**WSPF-2013-10448**:  Jackson alleged that a non-defendant, Captain

Lebbeus Brown, turned the water off in Alpha Cell 404, and did not turn it

4

back on when Jackson was placed in that cell on May 22.  Jackson also alleged that he notified defendant Esser of the water issue on several occasions, but Esser did not turn on the water.

Institution Complaint Examiner Ellen Ray investigated Jackson's grievance and confirmed that the water in Alpha Cell 404 had indeed been turned off between May 22 and 27.   Ray attests that because Jackson referenced two staff members (Brown and Esser), she interpreted Jackson to be complaining only about these two staff members.   In crafting her recommendation, Ray further noted that Jackson had not complained about a lack of water until May 27, and that he had been offered a different cell on May 24, but Jackson refused.   Nonetheless, Ray affirmed Jackson's complaint, and the reviewing authority accepted Ray's recommendation and affirmed this grievance.

Believing he had to appeal the results to complete the exhaustion process, Jackson appealed, but it was untimely.  Nonetheless, it was accepted after the corrections complaint examiner found good cause.  The examiner also recommended affirming Jackson's grievance, and the Office of the DOC Secretary adopted that recommendation and affirmed.

**WSPF-2013-10449:**   Jackson complained that defendant Edge refused to treat his severe dehydration despite learning that he had gone without running water for five days.  Jackson specifically claimed that when told about his water issue, rather than treating him for dehydration, Edge

5

instead responded by screaming for Esser to turn his water back on.  Ray recommended dismissal of this inmate complaint, and the reviewing authority dismissed the grievance.  While CCE recommended returning the complaint to the institution for further investigation, the Office of the DOC Secretary ultimately disagreed, affirming the dismissal of Jackson's complaint.

**WSPF-2013-10776:**   Jackson also complained that defendants Flannery and Suthers denied him medical attention after he complained about chest and back pain on May 27.  ICE Ray recommended dismissal of this grievance because Jackson's medical records showed that Flannery had actually called the on-call nurse at 1:00 a.m. on May 28, and the reviewing authority agreed, with the modification that the nurse did not speak directly to Jackson.  The CCE agreed with the modification and recommended dismissing the appeal with the modification, which the Secretary accepted.

**WSPF-2013-10778:**   Jackson alleged that defendant Edge tried to obtain labs to assess his dehydration on May 31, but should have taken them on May 27.  Ray investigated and recommended dismissing this grievance because Jackson's medical records showed Edge attempted to obtain Jackson's labs on May 31, but Jackson refused, and the reviewing authority accepted that recommendation and dismissed the inmate complaint.  Jackson appealed, but the CCE also recommended dismissal and the Secretary agreed and dismissed.

**WSPF-2013-1128:** Jackson complained that defendant Esser denied him medical attention for three of the five days that Jackson was without water. Ray recommended rejecting the grievance because Jackson had already raised that issue in the ICRS. The reviewing authority concluded that Ray appropriately rejected WSPF-2013-1128.

Defendants' position is that *none* of these five complaints would have prompted ICE Ray to investigate Jackson's claims (much less given her a fair opportunity to resolve) that: (1) Alpha cell 404 was covered in feces and contained incapacitating agents; (2) he was denied his inhaler and nasal spray; (3) he was singled out for mistreatment; and (4) he had complained about a lack of running water to defendants Hoem, Boisen, Suthers, Cockroft, Jones and Edge. Jackson argues in response that: (1) he adequately exhausted these claims; and (2) the administrative process was unavailable to him because those five grievances were not processed.[2] Neither argument have merit on this record.

Starting with Jackson's first argument, with one narrow exception, the undisputed evidence of record establishes that Jackson's inmate complaints did *not* raise any of the issues on which defendants now seek summary judgment for failure to exhaust. As for Jackson's claim that Alpha cell 404 was covered in feces and contained incapacitating

---

[2] Indeed, Jackson devotes a significant portion of his opposition brief arguing that ICE Ray made false statements in her review of his inmate complaints and in her declaration submitted in support of defendants' motion. However, the truthfulness of Ray's statements about her own investigation are not particularly relevant to whether *Jackson* exhausted his administrative remedies with respect to the five grievances themselves. Rather, the question is what was the scope of Jackson's grievances and whether Jackson followed Wisconsin's grievance procedures with respect to exhausting these claims. While the court addresses Jackson's concerns about Ray in resolving his motion for sanctions, therefore, it need not entertain Jackson's unsubstantiated attack on Ray's truthfulness with respect to the question of exhaustion.

agents, there is no dispute that Jackson failed to include those details about Alpha cell 404 in any of his inmate complaints claiming that his cell lacked running water. Accordingly, Jacksons' grievances failed to afford Ray notice that she should investigate whether Jackson had, indeed, been subjected to such conditions. And the fact that Jackson may have experienced these conditions at the same time he was being deprived of running water, while deplorable, does *not* establish that he actually properly raised these conditions in his grievances. *See Schillinger v. Kiley*, 954 F.3d 990, 996 (7th Cir. 2020) (finding that plaintiff's complaint about a delay in treatment *after* an assault by another inmate did not serve to exhaust his claim that correctional officers failed to protect him from the attack, since the inmate complaint raised a different problem and thus "did not give notice of the issue complained of in this lawsuit (failure to protect)"). Thus, Jackson's complaint about access to water remains, but he may not pursue a claim challenging the presence of feces or incapacitating agents in his cell.

Whether Jackson exhausted his claim that he was denied his inhaler and nasal spray is a closer call. Jackson did complain that he had been denied medical attention in WSPF-2013-10449, WSPF-2013-10776, and WSPF-2013-10778. However, in WSPF-2013-10449, he only complained in general terms that Edge did not treat him for dehydration, making no mention of whether she failed to treat him for difficulty breathing or address his need for his inhaler or nasal spray; and in WSPF-2013-10778, Jackson similarly complained about a delay in having his labs taken, but neither made reference to a need for these two items nor reported unaddressed difficulty breathing or chest pain. As for WSPF-2013-10776, Jackson *did* allege that he complained about chest and back pain on

8

May 27, but none of his allegations specifically mentioned any unsuccessful efforts to obtain his inhaler or nasal spray, nor more broadly referenced a need for either of those treatments to address a medical issue.  Accordingly, defendants have shown that Jackson failed to exhaust his administrative remedies with respect to his Eighth Amendment deliberate indifference claims against defendants Cockroft and Jones, for failing to provide Jackson his inhaler and nasal spray.

As for Jackson's "class-of-one" equal protection claim, he was not required to specify that legal theory to exhaust this claim adequately; rather, "[as] in a notice pleading system," all he needed to do was "object intelligibly to some asserted shortcoming."  *Strong v. David*, 297 F.3d 646, 650 97th Cir. 2002).  In other words, "the standard is whether the offender complaint would put an official on notice of the plaintiff's claim."  *Wille v. Pugh*, No. 13-cv-1024-pp, 2015 WL 5254532, at *6 (E.D. Wis. Sept. 9, 2015) (citing *Strong*, 297 F.3d at 650).  Here, Jackson's allegations that non-defendant Brown turned off the water to cell 404, but that defendant Esser would not turn it back on after his placement there was sufficient to provide notice of his claim challenging that condition of his confinement, and indeed, defendants concede that Jackson exhausted his administrative remedies with respect to his deliberate indifference claim against Esser.  That is sufficient for Jackson to exhaust his class of one claim against Esser as well.  However, wholly absent from Jackson's claim is any indication that any other WSPF official singled him out for mistreatment, or treated him differently than any other inmates between May 22 and 27, 2013, which would alert prison officials to the possibility that other officials were involved in

9

mistreating Jackson.  As such, with the exception of Esser, defendants entitled to summary judgment with respect to Jackson's Fourteenth Amendment equal protection claim.

Similarly, as for Jackson's lack of water claim against defendants Hoem, Boisen, Suthers, Cockcroft, Jones and Edge, they acknowledge that Jackson did not need to specifically name *each* defendant involved in the underlying denial.  *Maddox v. Love*, 655 F.3d 709, 722 (7th Cir. 2011).  However, defendants maintain that Jackson was required provide WSPF officials sufficient information to allow them to investigate the nature of his claim, and his allegations -- that Brown turned off the water, and Esser ignored his complaints to turn it back on -- failed to alert prison officials of the need to investigate a broader, far reaching problem related to staff deliberate indifference to events that took place between May 22 and 27, 2013.

Most critically, Jackson's grievances failed to complain that other officers, or suggest that any other officers were aware that he lacked running water in his cell, which may have been sufficient to alert ICE that a broader investigation was appropriate.  Instead, Jackson complained about Brown's decision alone to turn off the water and Esser's sole failure to turn it back on, despite Jackson complaining about it.  As such, there was no call for ICE Ray to investigate beyond the actions or inaction of Brown and Esser.[3]  Accordingly,

---

[3] Jackson also points to another inmate's grievance, which he now claims was submitted on his behalf.  In particular, Jackson claims that David Trotter submitted an inmate complaint that raised Jackson's lack of water, alleging in particular that everyone Jackson complained to ignored him. (*See* dkt. ##47-8, 48.)  However, Wisconsin's grievance procedures do not allow inmates to raise issues on behalf of another prisoner; rather, inmates may file grievances that "personally affect the inmate or institution environment."  Wis. Admin. Code §§ DOC 310.01(2)(a), 310.06(1), 310.10(6)(b).  Moreover, that Jackson complained to "everyone" is only slightly better than naming no one, since it gives ICE almost as little to go on, were she even inclined to try to investigate.

defendants have proven Jackson's failure to exhaust his administrative remedies with respect to deliberate indifference claim on his access to running water against any defendant save Esser, and the court will grant defendants' motion to dismiss his deliberate indifference claims against Hoem, Boisen, Suthers, Cockroft, Edge and Jones.

Finally, the court only briefly addresses Jackson's alternative argument that the grievance system was unavailable to him.  Since defendants do not dispute that he *did* properly exhaust the claims raised in some five, separate grievances detailed above, this argument is confusing at best and frivolous at worst.  Jackson appears to be suggesting that ICE Ray did not process his grievances quickly enough, but there is no suggestion from the record that Ray did not follow the ICRS procedures in processing the five inmate grievances discussed above.  More importantly, Jackson has submitted no evidence suggesting that he even attempted to grieve his unexhausted claims and was prevented from doing so.  Accordingly, the court will grant defendants' motion for partial summary judgment on these unexhausted claims without prejudice:  the Eighth Amendment claims related to his alleged placement in a cell with feces; exposure to incapacitating agents; access to his inhaler and nasal spray; and denial of water against defendants Hoem, Boisen, Suthers, Cockroft and Jones; and the Fourteenth Amendment, class-of-one claim, under *Ford v. Johnson*, 362 F.3d 395, 401 (7th Cir. 2004).  Of course, the court recognizes that this dismissal functions as one with prejudice, since it almost certainly would be too late for Jackson to exhaust them now.  *See Walker v. Thompson*, 288 F.3d 1005, 1009 (7th Cir. 2002) ("Dismissal for failure to exhaust is without prejudice and so does not bar reinstatement of the suit unless it is too late to exhaust.") (citations omitted).  Since no

other claims remain against these defendants, the court will also dismiss defendants Hoem, Boisen, Suthers, Cockroft and Jones from this lawsuit.

## II.     Jackson's Motion for Sanctions

Jackson has also moved for sanctions against non-defendant ICE Ellen Ray, on the ground that Ray could not attest to the authenticity of Jackson's inmate complaints, since her statements were based on hearsay.  Jackson specifically challenges Ray's statements about her investigations into the allegations in his inmate complaints, claiming that Ray did not have personal knowledge to speak to the merit of his allegations, pointing to Ray's statement that she investigated Jackson's allegation that his water was not on, and that she learned Jackson's water was off from May 22 until May 27.  Jackson also challenges Ray's representations that he was on observation status between May 22 and 24, and thus, could have raised his concerns with staff about the water issue in his cell.

Defendants oppose the motion, pointing out that Ray's statements in her declaration were based on her own investigation of Jackson's allegations in his inmate complaint, and regardless, her statements were not submitted by defendants for the truth of the matter asserted.  The court agrees.  In her declaration in support of defendants' motion for partial summary judgment, Ray attested that she made the statements based on her personal knowledge and "review of records maintained by and kept in the course of regularly conducted activities of the Wisconsin Department of Corrections (Corrections) and Wisconsin Secure Program Facility (WSPF)."  (Ray Decl. (dkt. #43) 1.)  Ray did *not* attest that she knew personally whether his water was on or off for the period of time; Ray

merely attested that she investigated Jackson's allegations and learned from her investigation that the water had indeed been turned off as Jackson alleged.  Moreover, Ray's personal impressions from her investigation do not constitute hearsay, although their relevance may be limited.

Furthermore, defendants point out that Ray's statements in her declaration are not hearsay, since they are not being offered for the truth of the matter asserted.  Instead, defendants submitted her declaration in support of their affirmative defense of exhaustion, the analysis of which does not touch on the actual *merit* of Jackson's claims in this lawsuit (or Ray's perception of their merit), but on whether Jackson's inmate complaints adequately alerted prison officials to his grievances and followed Wisconsin's grievance procedures.  As such, even assuming that Ray's statements relied on hearsay or were false, such statements were unlikely to affect the outcome of defendants' exhaustion motion.

To the extent Jackson seeks to sanction Ray for submitting misrepresentations to the court, Jackson's evidence in support is speculative and unnecessarily inflammatory. Jackson raises general concerns with the manner in which Ray processed his inmate complaints, and he hyperbolically charges Ray with lying, devoting multiple pages of his motion and opposition to defendants' motion for summary judgment to personally attacking her.  (*See* dkt. #46, at 8-15 (referring to Ray as a "fixer," "compulsive liar," and "real piece of . . . work," and charging her with destroying prisoner evidence and lying about the non-existence of evidence).)  Jackson's rhetoric has no place in any court filing, much less one in which the assertions of malfeasance are completely unsubstantiated. Accordingly, the court will deny plaintiff's motion for sanctions, advising plaintiff that he

should focus his litigation efforts in this lawsuit on the relevant matters at hand.  The court will also pay little attention to any future, unsupported charges of falsification or misrepresentations, except perhaps to sanction him.


ORDER

IT IS ORDERED that

1.  The State Defendants' motion for partial summary judgment (dkt. #41) is GRANTED in part and DENIED in part, as provided above.

2.  The following claims remain in this lawsuit:  Plaintiff's Eighth Amendment deliberate indifference and Fourteenth Amendment class-of-one equal protection claims against defendant Esser arising from Esser's failure to turn on plaintiff's water; and Plaintiff's Eighth Amendment medical care claims against defendants Esser, Flannery and Edge.

3.  Defendants Hoem, Suthers, Boisen, Cockroft, and Jones, are DISMISSED from this lawsuit.

4.  Plaintiff Raynard Jackson's motion for sanctions (dkt. #49) is DENIED.

5.  The dispositive motion deadline is reset for **May 28, 2021,** with the understanding that the court may need to adjust the pre-trial deadlines.

Entered this 28th day of April, 2021.

BY THE COURT:

/s/

_____
WILLIAM M. CONLEY
District Judge

14