IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

RAYNARD R. JACKSON,

                            Plaintiff,                          OPINION AND ORDER

        v.                                                      18-cv-237-wmc

DANE ESSER, DARRYL FLANNERY
and BETH EDGE,

                            Defendants.

*Pro se* plaintiff Raynard Jackson is now proceeding in this lawsuit against three employees of the Wisconsin Department of Corrections ("DOC") working at its Secure Program Facility ("WSPF"). Specifically, plaintiff was granted leave to proceed against these defendants on Eighth and Fourteenth Amendment claims arising out of the conditions of his confinement at WSPF between May 22 and 28, 2013. On April 28, 2021, the court granted in part and denied in part defendants' motion for partial summary judgment on the ground that Jackson failed to exhaust his administrative remedies with respect to some of his claims (dkt. #41) and denied Jackson's motion for sanctions (dkt. #49). (Dkt. #60.) As a result, the court also dismissed without prejudice the only claims Jackson was pursuing against additional defendants Hoem, Suthers, Boisen, Cockroft and Jones.

        Plaintiff Jackson responded to those rulings by requesting reconsideration (dkt. #62), appointment of counsel (dkt. #65), and my recusal from this case (dkt. #74). Pending as well is the remaining defendants' motion to compel plaintiff to sign an authorization for release of his health records maintained by the DOC (dkt. #68) and

plaintiff's renewed motion for sanctions (dkt. #72).[1]  For the reasons that follow, the court will deny plaintiff's new motions, although his motion for recruitment of counsel will be denied without prejudice.  The court will also grant defendants' motion to compel.


OPINION

**I.     Plaintiff Jackson's Motions**

**A. Reconsideration**

As noted, the court granted defendants' motion for partial summary judgment in its prior order with respect to claims of deliberate indifference under the Eighth Amendment and of class-of-one, equal protection claims under the Fourteenth Amendment, all asserted against now dismissed defendants Hoem, Boisen, Suthers, Cockroft and Jones arising out of his alleged inability to access running water from May 22-28.   Plaintiff's Eighth Amendment claims related to plaintiff's allegedly being placed in a cell with feces on the walls, exposed to incapacitating agents, and desired access to his inhaler and nasal spray. The court also denied plaintiff's motion for sanctions based on his so-called hearsay challenge to the declaration of WSPF's litigation coordinator, Ellen Ray, who authenticated Jackson's relevant inmate complaints and detailed her involvement in processing those complaints.   The court similarly rejected Jackson's unsubstantiated charges of fraud and conspiracy against Ray.

---

[1] Since Jackson indicated that he would object to any order issued by Magistrate Judge Stephen Crocker (*see* dkt. #71, at 4), the court will going forward address in the first instance any discovery-related motions as well.

While plaintiff seeks reconsideration of a number of the court's ruling rulings, he fails to identify a specific error of law or fact justifying reconsideration. Instead, plaintiff merely disagrees with the court's conclusions that: (1) none of his inmate complaints adequately alerted prison officials that defendants Hoem, Suthers, Boisen, Cockroft and Jones (or anyone other than non-defendant Lebbeus Brown and defendant Esser) were aware of and failed to address the lack of water in his cell; and (2) he never raised concerns about other conditions of his confinement beyond the absence of water. Plaintiff also asserts that the court ignored his submissions in opposition to defendants' motion for partial summary judgment and in support of his motion for sanctions, pointing to exhibits indicating that litigation coordinator Ray confirmed plaintiff had exhausted claims set forth in multiple inmate complaints.

As plaintiff argues, Ray did confirm that plaintiff exhausted *some* inmate complaints, including several that are part of the record in this case -- WSPF-2013-10448, WSPF-2013-10449, WSPF-2013-13616, WSPF-2014-131, and WSPF-2013-10776. (*See* dkt. ##13-2, 13-3, 13-4.) However, pointing out that Ray acknowledged plaintiff having followed WSPF's exhaustion procedures for numerous, other inmate complaints is *not* evidence that he exhausted those procedures as to the dismissed claims in this lawsuit. In any event, the court's April 28th opinion expressly addressed whether those inmate complaints served to exhaust the specific claims in this lawsuit, finding that inmate complaints WSPF-2013-10448, WSPF-2013-10449, and WSPF-2013-10776 did not. Instead, those complaints concerned: non-defendant Brown's decision to turn off the water in the cell; defendant Esser's refusal to turn it back on; defendant Edge's refusal to treat

plaintiff's severe dehydration after he was removed from his cell; and defendant Flannery's and Suthers' alleged failure to provide plaintiff medical attention after he complained above chest and back pain. (Dkt. #60, at 4-7.) As for plaintiff's other complaints -- WSPF-2013-16033 and WSPF-2013-13616 -- those did not relate to plaintiff's claims in this lawsuit at all. Instead, plaintiff challenged a conduct report he received in WSPF-2013-16033 (dkt. #47-22), and complained that Hoem lied in a report from June 28, 2013, in WSPF-2013-13616 (dkt. #47-17). Finally, plaintiff wholly fails to explain how these complaints served to exhaust *any* of his dismissed claims.

Plaintiff further claims the court ignored his claim that litigation coordinator Ray refused to process five inmate complaints about his conditions of confinement in his cell, pointing to two Interview/Information Requests he submitted to Ray in June of 2013 and 2016, respectively. (Dkt. ##47-6, 47-7.) However, the court noted that plaintiff raised an argument about the unavailability of the inmate complaint system, but rejected it because he offered *no* evidence detailing the nature of those complaints he was supposedly prevented from submitting, and in any event, plaintiff successfully filed five, other inmate complaints that *were* processed. Moreover, plaintiff fails to direct this court to a previous filing improperly rejected, much less proof that he appealed from that wrongful rejection. As importantly, Jackson does not detail the actual allegations supposedly set forth in these rejected inmate complaints *or* when he submitted them for review. Instead, plaintiff refers the court to Interview/Information Requests he submitted to Ray inquiring about inmate complaints that had been expressly rejected in writing. Because Jackson did not detail the allegations he was attempting to bring in those inquiries, there is no basis to reasonably

4

infer that he actually followed the available procedures related to his previously dismissed claims.

Plaintiff further incorrectly claims that the court ignored his arguments challenging Ray's declaration in this case.  On the contrary, the court rejected plaintiff's argument that Ray's declaration amounted to inadmissible hearsay, since the statements in her affidavit were not offered for the truth of the matter asserted, but rather to assess the *scope* of Jackson's actual grievances.  (*See* dkt. #60, at 7 n.2.)

Finally, plaintiff insists that the court failed to read his filings, which is also not true.  Accordingly, the court must deny Jackson's ill-conceived motion for reconsideration, as well as his requests for a hearing and sanctions.

### B. Appointment of counsel

Jackson also renews his request for appointment of counsel.  However, as this court has previously explained, civil litigants have no constitutional or statutory right to the appointment of counsel.  *E.g.*, *Ray v. Wexford Health Sources, Inc.,* 706 F.3d 864, 866-67 (7th Cir. 2013); *Luttrell v. Nickel,* 129 F.3d 933, 936 (7th Cir. 1997).  Certainly, the court may in its discretion decide to help recruit counsel to assist an eligible plaintiff who is proceeding under the federal *in forma pauperis* statute.  *See* 28 U.S.C. § 1915(e)(1) ("The court may request an attorney to represent an indigent civil litigant *pro bono* publico.")  But the central question is "whether the difficulty of the case—factually and legally—exceeds the particular plaintiff's capacity as a layperson to coherently present it to the judge or jury himself."  *Pruitt v. Mote*, 503 F.3d 647, 655 (7th Cir. 2007).

5

Plaintiff's grounds for recruitment of counsel in this case are that: (1) he has no legal training and his reading is impaired; (2) he takes psychotropic medication to address various psychological disorders; (3) the prisoner who had been helping him in this lawsuit at WSPF has been separated from Jackson; (4) this court has appointed counsel for him in a previous case; (5) this case is complex and might require expert witness testimony. To begin, the court has concerns about the accuracy of this filing, since Jackson is incarcerated at Waupun not WSPF, and some of his representations appear formulaic, rather than a genuine description of his capabilities. Even assuming some discrepancies was due to a clerical or transcription error, as the court has already observed, plaintiff's filings to date suggest that he is capable of litigating this case without an attorney. Indeed, the materials plaintiff submitted in opposition to defendants' motion for summary judgment, as well as his more recent motions and responses to defendants' motions, suggest a clearer understanding of the legal standards governing exhaustion and his obligation to disclose his medical records than most *pro se* prisoners litigating before this court.

Moreover, nothing in the record suggests that plaintiff does not recall the facts relevant to his claims. Furthermore, as the court also previously noted, the assistance of another prisoner in preparing submissions to the court neither weighs in favor of or against the decision to recruit counsel. *See Henderson v. Ghosh*, 755 F.3d 559, 564 (7th Cir. 2014) ("[T]he fact that an inmate receives assistance from a fellow prisoner should not factor into the decision whether to recruit counsel."). In short, the court remains unpersuaded that plaintiff needs an attorney to litigate his claims at this stage, and will deny plaintiff's motions without prejudice to his ability to renew his request for assistance in recruiting

6

counsel at a later date should the tasks associated with litigating this case become unmanageable.

### C. Recusal

Finally, plaintiff asks that I recuse myself from this case, a request which must be denied as groundless. Under 28 U.S.C. § 455(a), I am required to recuse myself from "any proceeding in which [my] impartiality might reasonably be questioned." Although I have a duty to recuse myself when presented with valid reasons, I also have a duty to refuse to recuse myself when justification is lacking. *N.Y. City Hous. Dev. Corp. v. Hart*, 796 F.2d 976, 980 (7th Cir. 1986). Plaintiff maintains that I am biased against him because I have ignored many of his filings. As explained above, however, the court's opinions and orders did not always need to detail every aspect of Jackson's filings and arguments to resolve defendants' motion. Regardless, while Jackson is free to appeal any of my rulings that may be against him, that I did not find in his favor is *not* a basis for recusal. *See Liteky v. United States*, 510 U.S. 540, 555 (1994). Therefore, his motion will be denied.

## II.   Defendants' motion to compel and plaintiff's motion for sanctions

This just leaves defendants motion to compel plaintiff to sign a modified medical release authorization and plaintiff's renewed motion for sanctions. Specifically, defendants explain that as a result of an oversight, defense counsel does not have an adequate authorization from Jackson to give them access to his health records needed to litigate this case, and he now refuses to provide one. In May of 2020, defense counsel sent Jackson a

medical authorization, but he declined to sign it.  Instead, on June 15, 2020, Jackson returned a different form, a DOC-1163A Authorization for Use and Disclosure of Protected Health Information ("PHI") form, without a signature page.  Beyond lacking a signature, the authorization attempts to limit the records defendants could obtain to those created between May 1, 2013, to May 1, 2014.  Unfortunately, defense counsel did not immediately realize that plaintiff's signature page was missing or that his authorization was unreasonably limited as to time frame.  Rather, counsel represents that a year passed before they realized the issue.

On May 20, 2021, after realizing that plaintiff's authorization would not permit access to needed documents, defense counsel arranged for a new authorization to be delivered to Jackson, and on May 21, 2021, counsel notified Jackson of her intent to take his deposition.  On May 25, 2021, however, Jackson declined to sign the medical authorization and instead returned another DOC-1163A form, again limiting the timeframe to records from May 22, 2013, to May 22, 2014, and the disclosing agency to the Health Services Unit at Waupun where Jackson was incarcerated in 2013.

Defendants are correct in asserting that given the scope of plaintiff's claims, they are entitled to information about Jackson's medical and psychological history before the events that occurred in May of 2013, particularly to determine whether Jackson had any pre-existing injuries.  Defense counsel maintain that they are further entitled to information beyond May of 2014 to determine how long any injury lasted and whether it was permanent.  That said, defendants are willing to compromise, proposing a time frame

of May 1, 2012, to May 22, 2014, but ask that Jackson complete the authorization sent by defense counsel, not the DOC authorization he has now returned twice.

In opposition, plaintiff has still not explained why he failed to authorize this broader time frame or use the authorization provided by defense counsel, much less sign the form, focusing instead on defense counsel's delay, casting it as a ploy to disrupt the trial schedule as opposed to a legitimate attempt to discover relevant information. Plaintiff further complains that defendants already have filed his medical records in this case, despite the fact that he did not authorize the disclosure of those records. Since Jackson's second argument relates more directly to his motion for sanctions, the court focuses first on plaintiff faulting defendants admittedly substantial delay in pursuing this discovery, However, the court has no basis to doubt defense counsel's sincerity in representing that their oversight was caused by a lack of diligence, not bad faith. Moreover, their discovery request appears reasonable. Therefore, although the court expects defense counsel to avoid similar mistakes in the future, this omission does not preclude them from relief. Accordingly, the court will direct plaintiff to file promptly with the court under seal a modified authorization permitting defendants' to access records from **May 1, 2012, to May 22, 2014, from all DOC institutions.** Jackson is to file that updated authorization no later than **December 14, 2021.** If Jackson needs another copy of the authorizations previously sent to him, he should promptly contact defendants' counsel to obtain a copy for his review and authorization.

To be clear, however, the court is not *ordering* Jackson to provide this authorization, since the court does not generally compel adverse parties to disclose confidential, medical

records if they choose not to do so.  However, Jackson needs to understand that his continued failure to comply would prevent him from seeking monetary damages for any physical or emotional damages suffered as a result of his conditions of confinement in May of 2013, unless he allows defendants to access medical records related to his physical and emotional conditions prior to the events that took place in May of 2013, and for a year after that date.  If Jackson chooses not to provide this disclosure, then the court would have no choice but to preclude Jackson from pursuing damages related to any physical or emotional injuries he suffered as a result of those conditions of confinement.

For a similar reason, the court will deny Jackson's motion for sanctions against AAG Remington and Ellen Ray.  Jackson seeks sanctions because in July of 2020, defendants attached to their motion for partial summary judgment two documents from his medical file that he had not authorized be disclosed -- certain medical records from May 27 and 31, 2013.  (*See* dkt. ##73-1, 73-2.)  However, these documents were not part of Jackson's medical file; instead, they were attachments to Jackson's inmate complaints related to his own efforts to obtain medical care after he was housed without water in his cell.  Moreover, given that Jackson has already filed one of the documents (the May 27, 2013, record) as an attachment to his amended complaint (*see* dkt. #13-8), there is no basis to infer bad faith on the part of defense counsel in filing them.

In any event, while Jackson has an interest in protecting the confidentiality of his medical records as acknowledged above, he waives that interest at least in part by filing a lawsuit alleging claims or seeking damages arising out of his medical care.  Since there is no federal common law physician-patient privilege and under Wisconsin law, that privilege

10

has been waived under Wis. Stat. § 905.04(4)(c), he will have to relinquish the records or face sanctions, up to and including dismissal of his case.  *Ammons v. Gerlinger*, No. 06-C-20-C, 2007 WL 5659413, at *2 (W.D. Wis. Mar. 12, 2007).  Indeed, since the sole function of the authorization is to permit Jackson's medical record *custodian* to disclose his records to third parties, defense counsel arguably has no obligation to seek Jackson's authorization to obtain and file medical records that relate to his claims in this lawsuit. For all these reasons, the court must deny Jackson's motion for sanctions.


ORDER

IT IS ORDERED that:

1) Plaintiff Raynard Jackson's motion for reconsideration (dkt. #62) is DENIED.

2) Plaintiff's motion to appoint counsel (dkt. #65) is DENIED without prejudice.

3) Plaintiff's motion for recusal (dkt. #74) is DENIED.

4) Defendants' motion to compel (dkt. #68) is GRANTED to the extent set forth above.  Plaintiff Raynard Jackson has until **December 14, 2021**, to file a signed medical records authorization on the form provided by defense counsel authorizing disclosure of his medical records from all DOC institutions from **May 1, 2012, through May 22, 2014**, or show additional cause as to why he has chosen not to file the modified authorization.

5) Plaintiff's motion for sanctions (dkt. #72) is DENIED.

6) Plaintiff's motion opposing defendants' motion to stay (dkt. #59) is DENIED as moot.

11

7) The clerk of court is directed to set this matter for a scheduling conference with Magistrate Judge Stephen Crocker to take place no sooner than **December 21, 2021.**

Entered this 23rd day of November, 2021.

BY THE COURT:

/s/

_____
WILLIAM M. CONLEY
District Judge

12