IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

RAYNARD R. JACKSON,

Plaintiff,                                    OPINION AND ORDER

v.
                                                           18-cv-237-wmc
LIEUTENANT DANE ESSER,

Defendant.

Plaintiff Raynard Jackson filed this lawsuit to challenge the conditions of his confinement at the Wisconsin Secure Program Facility ("WSPF") for six days between May 22 and May 28, 2013, during which he was held in a clinical observation cell that was allegedly covered in another inmate's feces and had no running water. (Dkt. #13.) All of Jackson's claims, with the exception of his Eighth and Fourteenth Amendment claims against defendant Lieutenant Dane Esser, were dismissed at screening or on summary judgment, including claims against several defendants dismissed for failure to exhaust. (Dkts. ##27, 60, 130.) After judgment was entered for defendant Esser following a jury verdict in his favor (dkt. #183), Jackson pursued an appeal.

The Seventh Circuit affirmed, in part, but remanded this case for an evidentiary hearing under *Pavey v. Conley*, 544 F.3d 739 (7th Cir. 2008) (a "*Pavey* hearing"), to determine whether Jackson had exhausted his available administrative remedies with respect to additional claims raised in five grievances that went unprocessed for procedural reasons. (Dkt. #197.) During the *Pavey* hearing, this court heard testimony from Jackson and from Institution Complaint Examiner ("ICE") Ellen Ray. (Dkt. #210.) Defendants

ask the court to find that Jackson failed to exhaust available administrative remedies with respect to those claims and to dismiss this case. (Dkt. #218.) After considering the issues identified by the Seventh Circuit, testimony at the *Pavey* hearing, and the parties' pre- and post-hearing submissions, the court finds that prison officials properly refused to process any of plaintiff's other grievances, and therefore, he had failed to exhaust available administrative remedies. Accordingly, plaintiff's remaining claims will be dismissed for the reasons explained further below.

## PROCEDURAL HISTORY

### A. Background[1]

This case has a long and complicated procedural history, beginning with the 119-page complaint filed originally in 2018 by plaintiff Raynard Jackson, an inmate incarcerated by the Wisconsin Department of Corrections ("DOC"), who was then housed at WSPF. For context, the court begins with an overview of Jackson's claims about the conditions of his confinement as set forth in an amended complaint. (Dkt. #13.) In that amended complaint, Jackson alleged violations of the Eighth and Fourteenth Amendments against the following defendants: (1) Captain James Boisen; (2) Food Service Administrator ("FSA") Anthony Broadbent; (3) Captain Brown; (4) Correctional Officer Michael Cockroft; (5) Registered Nurse Beth Edge; (6) Lieutenant Dane Esser; (7) Captain Darryl Flannery; (8) Deputy Warden Tim Haines; (9) Psychologist Stacy Hoem; (10)

---

[1] Plaintiff is currently represented by counsel. To the extent that plaintiff filed this case initially while representing himself, his pro se submissions are "held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quotation marks and citations omitted).

Correctional Officer Timothy Jones; (11) Captain Sarah Mason; (12) Institutional Complaint Examiner ("ICE") Ellen Ray; (13) Crisis Worker Joni Shannon-Sharpe; (14) Sergeant Dan Suthers; and (15) Security Director Dan Sweeney.[2]

Jackson suffers from asthma and had a medical restriction that prohibited the use of incapacitating agents against him. He claims that he was placed in a clinical observation cell (cell A-404), which smelled of feces and a chemical agent that had been used to extract the cell's previous occupant. During the extraction process, Captain Brown had apparently ordered the water to cell A-404 turned off, but failed to advise officers in the control center to reactivate the water or ensure that it was clean before Jackson was placed in the cell on May 22, 2013.

Jackson alleged that he complained to several of the defendants that clinical observation cell A-404 had not been cleaned and had no running water, but he was ignored. During this time, Jackson was allegedly denied nutritional fluids, as well as his asthma inhaler and nasal spray. On May 27, 2013, Jackson complained to Nurse Edge that he was still without running water and being denied nutritional fluids, and he further reported having severe chest pains. Nurse Edge asked a correctional officer to call defendant Lieutenant Esser immediately, but he allegedly disregarded Jackson's complaints. Nevertheless, running water was returned to Jackson's cell that same day, and he was released from clinical observation cell A-404 the following day on May 28.

---

[2] Defendant Cockroft's name is spelled as "Cocroft" and "Cockroft" throughout the record, both in court documents and the parties' submissions. (Dkt. #13, ¶ 25; Dkt. #36, ¶ 2; Dkt. #60, at 1, 3.) Likewise, defendant Boisen's name is spelled as "Boisen" and "Bolsen" throughout the record, both in court documents and the parties' filings. (Dkt. #13, ¶ 25; Dkt. #60, at 4.) For the sake of consistency, the court refers to all of the defendants by the spelling on the court's docket sheet.

The court granted Jackson leave to proceed on claims in the amended complaint concerning the following conditions allegedly endured in a clinical observation cell between May 22 and May 28, 2013:

- Eighth Amendment claims against defendants Dr. Stacey Hoem, James Boisen, Daniel Suthers, Michael Cockroft, Timothy Jones, Dane Esser, and Beth Edge, for refusing to take corrective action despite knowing that: Jackson had no running water; his cell was covered in another inmate's feces; and it contained remnants of incapacitating agents, for which he had a specific medical contraindication.

- Eighth Amendment claims against defendants Cockroft, Jones, and Edge, for failing to provide Jackson his inhaler and nasal spray. In particular, plaintiff alleged that even though he asked for it and reported chest pains: (1) Cockroft and Jones denied him those items on May 22; and (2) Edge denied him his inhaler on May 24.

- Eighth Amendment claim against defendant Esser for refusing Jackson access to medical attention for his dehydration and related symptoms.

- Eighth Amendment claim against defendant Daryl Flannery for his failure to provide Jackson medical treatment on May 27, 2013, despite his reported dehydration-related symptoms.

- Fourteenth Amendment, class-of-one claims against defendants Hoem, Boisen, Suthers, Cockroft, Jones, Esser, and Edge, for singling Jackson out for mistreatment as the only inmate without access to running water and medical care.

(Order on Leave to Proceed (dkt. #27) at 11, 16-17, 18.)

The defendants filed a motion for partial summary judgment, arguing that Jackson failed to exhaust administrative remedies for many of his claims. (Dkt. ##41-42.) In support, the defendants presented an affidavit from ICE Ray regarding Jackson's inmate complaint history, which demonstrated that Jackson had filed only five relevant complaints within the applicable 14-day time limit found in prison procedures: (1) WSPF-2013-10448, received on May 29, 2013 (alleging Captain Brown shut his water off); (2) WSPF-

2013-10449, received on May 29, 2013 (alleging denial of medical attention for dehydration); (3) WSPF-2013-10776, received on June 3, 2013 (alleging denial of medical attention); (4) WSPF-2013-10778, received on June 3, 2013 (alleging denial of medical attention for chest pains); and (5) WSPF-2013-1128, received on June 10, 2013 (alleging Lt. Esser denied him medical care). (Dkt. #42; Ray Decl. (dkt. #43) ¶ 1, and exhibits #43-1, at 1, and #43-4.)

In response, Jackson averred that he filed five additional complaints, which were reportedly confiscated by Ray, who then refused to process them. (Dkt. #46, at 4.) Jackson also argued that the grievance process was unavailable as to his five unprocessed complaints due to Ray's interference and, therefore, that any failure to exhaust them should be excused. (*Id*. at 5-6.) Noting Jackson had been able to file five other complaints that were processed during this same period, this court found Jackson's argument about the unprocessed complaints unsubstantiated. (Dkt. #60, at 7 n. 2, 11.) Instead, this court only summarized the five complaints that had been processed and reviewed by WSPF's ICE (*id*. at 4-7), concluding that Jackson exhausted his administrative remedies on the following claims:

(1) the Eighth Amendment and Fourteenth Amendment class-of-one equal protection claims against defendant Esser for failing to turn on Jackson's water;

(2) the Eighth Amendment claim that Esser denied Jackson access to medical care for dehydration and related symptoms; and

(3) the Eighth Amendment claim that defendants Edge and Flannery denied Jackson medical care for dehydration on May 27 and 28.

(*Id*. at 14.) However, the court also found that Jackson failed to exhaust remedies with respect to his claims concerning:

(1) the presence of feces or incapacitating agents in his cell (*id*. at 8);

(2) the denial of access to his inhaler and nasal spray (*id*. at 8-9);

(3) the class-of-one equal protection violation as to all defendants but Esser (*id*. at 9); and

(4) the lack of running water as to defendants Hoem, Boisen, Suthers, Cockroft, Edge, and Jones (*id*. at 11).

Thus, the court granted partial summary judgment on those unexhausted claims as well. (*Id*.)

Subsequently, the court granted summary judgment on the merits of Jackson's claims against Flannery and Edge for the alleged denial of medical care for chest pains caused by dehydration on May 27-28, 2013. (Dkt. #111.) Jackson's claims against defendant Esser for violating his rights under the Eighth and Fourteenth Amendment were then the subject of a three-day jury trial, which resulted in a verdict in Esser's favor on all of the claims against him.[3] (Dkt. #183.)

## B. Jackson's Appeal to the Seventh Circuit

Jackson filed an appeal that challenged both pretrial summary-judgment decisions on exhaustion and certain evidentiary rulings at trial. The Seventh Circuit affirmed in part, reversed in part and remanded in part. *Jackson v. Esser*, 105 F.4th 948, 953 (7th Cir. 2024). In particular, the Seventh Circuit found no error in the court's conclusion that Jackson had failed to exhaust his administrative remedies as to certain of his processed

---

[3] Jackson was represented at trial by counsel from Strang Bradley, LLC (attorneys James Odell and John Bradley), who continue to represent him.

complaints, the grant of summary judgment regarding Nurse Edge, and evidentiary rulings before trial. *Id*.

However, the Seventh Circuit questioned the court's summary rejection of Jackson's assertion that prison officials had failed or refused to process his five other complaints containing additional claims. *Id*. Specifically, Jackson claimed ICE Ray had failed to process these five additional inmate complaints, thereby interfering with his ability to exhaust his administrative remedies as to each. *Id.* at 955. The Seventh Circuit further summarized the substance of Jackson's unprocessed complaints as follows:

(1) Dr. Hoem, Cpt. Boisen, Sgt. Suthers, Lt. Esser, Nurse Edge, and Officers Cockroft and Jones deprived him of humane conditions due to the presence of feces and incapacitating agents in his cell, as well as the lack of water;

(2) Cockroft, Jones, and Edge denied him his nasal spray and inhaler while he was in the contaminated cell;

(3) Esser ignored his complaints about the cell conditions;

(4) Capt. Flannery failed to get him medical attention for his dehydration and chest pains caused by the feces and incapacitating agents in the cell; and

(5) Hoem, Boisen, Suthers, Cockroft, Jones, Esser, and Edge singled him out by depriving him of basic humane conditions, access to water, and access to medical care.[4]

*Id.*

The Seventh Circuit found Jackson's claim that prison officials failed to process five relevant inmate complaints "raised a genuine dispute about whether administrative

---

[4] Because DOC has a ten-year retention schedule, records of these unprocessed complaints no longer exist. (Hearing Tr. at 5.) Rather, Jackson's allegations about these unprocessed grievances were made in his declaration and brief in response to the defendants' initial motion for partial summary judgment on the issue of exhaustion. (Dkt. #46, #47).

remedies were unavailable for the issues raised in those grievances," and as such, a "*Pavey* hearing" was required. *Id.* at 957. Specifically, the Seventh Circuit questioned whether prison officials rejected those grievances for a legitimate reason under the regulations in place at the time they were filed. *Id.* at 958. In the absence of factual findings and credibility determinations in a "*Pavey* hearing on whether Jackson filed these grievances and did so properly," the Seventh Circuit held that summary judgment on several of the unexhausted claims was improper and that remand was required. *Id*. Accordingly, the Seventh Circuit instructed this court to hold a *Pavey* hearing to determine: "[1] whether Jackson filed the allegedly unprocessed grievances and, if he did, [2] whether WSPF officials failed to process them without good reason under Wisconsin law." *Id*.

OPINION

## I. Exhaustion of Administrative Remedies

The Prison Litigation Reform Act ("PLRA") provides that "no action shall be brought [under federal law] with respect to prison conditions . . . by a prisoner . . . until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Exhaustion is a condition precedent to suit in federal court, so a prisoner must exhaust all available remedies before he commences litigation; he cannot exhaust while his lawsuit is pending. *Perez v. Wisconsin Dept. of Corr.*, 182 F.3d 532, 535 (7th Cir. 1999). If the inmate fails to exhaust before filing suit in federal court, the court must dismiss the suit. *Jones v. Bock*, 549 U.S. 199, 223 (2007) ("There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court."). To exhaust, prisoners must "comply strictly" with the rules and procedures specified in the prison's

8

written policy. *Hacker v. Dart*, 62 F.4th 1073, 1078 (7th Cir. 2023). This includes the filing of "complaints and appeals in the place, and at the time, the prison's rules require." *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002).

To exhaust administrative remedies in Wisconsin, a state prisoner held in DOC must follow the Inmate Complaint Review System ("ICRS") process set forth in Wisconsin Administrative Code Chapter DOC 310. Under the regulations that were in effect in 2013, when plaintiff's challenged conditions of confinement occurred, Wisconsin state prisoners were required to start the complaint process by filing an inmate complaint with the institution complaint examiner ("ICE") within 14 days after the occurrence giving rise to the complaint. Wis. Admin. Code § DOC 310.0(6).[5] As it pertains to this case, there was also a weekly limit on the number of complaints an inmate could file: "[i]nmates may not file more than 2 complaints per calendar week, except that the ICE may waive this limit for good cause." Wis. Admin. Code § DOC 310.09(2).[6] In particular, the ICE could exclude from that limit complaints that raised "health and personal safety issues." *Id*. Additionally, each complaint could only contain one clearly identified issue, and complaints that violated this rule were required to be returned to the inmate without being processed. *Id*. at 310.09(1)(e), (3).

---

[5] On April 1, 2018, a new version of Wis. Admin. Code ch. DOC 310 went into effect. For purposes of this case, however, the court refers to the 2013 version of Wis. Admin. Code ch. DOC 310 in effect when plaintiff's claims arose.

[6] This regulation was amended in 2018 to cap inmates at *one* complaint per week except in certain limited circumstances, including issues related to inmate health and safety, as well as any complaint implicating the Prison Rape Elimination Act. *See* Wis. Admin. Code § DOC 310.07(7) (2023-24 ed.).

To satisfy the PLRA's exhaustion requirement, grievances must further be filed properly in compliance with prison rules and regulations. *Woodford v. Ngo*, 548 U.S. 81, 95 (2006). Even so, an inmate is required to exhaust only those administrative remedies that are *available* to the inmate. *Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006). Administrative remedies are not available where, although a process exists, officers are unable or unwilling to provide any relief, or prison administrators "thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Ross v. Blake*, 578 U.S. 632, 644 (2016); *see also Kaba v. Stepp*, 458 F.3d 678, 686 (7th Cir. 2006) (noting that the grievance procedure would not be available if prison personnel denied the prisoner forms, intimidated him into not pursuing formal grievances, and solicited other inmates to attack him in retaliation for filing grievances).

## II. Plaintiff's Evidentiary Hearing Under *Pavey*

As directed by the Seventh Circuit, this court held an evidentiary hearing to determine whether administrative remedies were available to plaintiff or, if not, whether exhaustion should be excused. Where exhaustion is contested, the Seventh Circuit has established a procedure that entails an evidentiary hearing to determine whether a prisoner has exhausted available administrative remedies as required by the PLRA, 42 U.S.C. § 1997e(a), before reaching the merits of the plaintiff's civil rights claims. *Pavey v. Conley*, 544 F.3d 739, 742 (7th Cir. 2008), *as amended on denial of reh'g and reh'g en banc* (7th Cir. Sept. 12, 2008) ("*Pavey I*"). Under this procedure, "debatable factual issues relating to the defense of failure to exhaust administrative remedies" are not required to be decided by a

jury but are to be determined by the judge.[7]  *Pavey I*, 544 F.3d at 740-41.  "At *Pavey* hearings, judges may hear evidence, find facts, and determine credibility."  *Wilborn v. Ealey*, 881 F.3d 998, 1004 (7th Cir. 2018) (citing *Pavey v. Conley*, 663 F.3d 899, 904 (7th Cir. 2011) ("*Pavey II*"), and *Pavey I*, 544 F.3d at 742).  Thereafter, the district court may allow the claim to proceed or dismiss it for failure to exhaust.  *Id.* (citing *Pavey I*, 544 F.3d at 742).

Because exhaustion is an affirmative defense, *Jones*, 549 U.S. at 216, the burden of proof is on the defendants to establish that administrative remedies were not exhausted, and not on the prisoner to show that administrative remedies were unavailable.  *Smallwood v. Williams*, 59 F.4th 306, 315 (7th Cir. 2023).  "Courts analyze a prisoner's exhaustion under the preponderance of the evidence standard."  *Williams v. Baldwin*, 239 F. Supp. 3d 1084, 1089 (N.D. Ill. 2017) (quotation omitted).

Turning to the first issue (whether plaintiff timely filed the grievances at issue), it is undisputed that the underlying, complained of incidents took place while plaintiff was in the clinical observation cell A-404 between May 22 and May 28, 2013, and that plaintiff began filing grievances about the conditions of that cell on May 29, 2013, the day after he had returned to his regular cell.  Plaintiff's inmate complaint history report shows that he filed five grievances between May 29 and June 3, 2013.  (Dkt. #208, at 4-5, citing Dkt. #41-1, at 1).  On June 4, 2013, plaintiff wrote an inmate request to ICE Ray, complaining that she refused to process other complaints and protesting that the two complaint limit

---

[7] After the *Pavey* hearing in this case, the U.S. Supreme Court decided in *Perttu v. Richards*, 605 U.S. 460 (2025), that issues of exhaustion "intertwined with the merits of a claim protected by the Seventh Amendment" must be decided by a jury.  605 U.S. at 479.  However, because the merits of plaintiff's underlying claims are not intertwined in any way with his efforts to exhaust administrative remedies, *Perttu* does not apply.

11

"[didn't] mean a thing when Lt. Esser endangered [his] health and safety per DOC 310.09(2)." (Dkt. #47-6.)  Ray responded to the inmate request by explaining that his unprocessed complaints did not fit within the exception to the two complaint limit because they were not "regarding an immediate health/safety issue" since he had already been returned to his regular cell.  (*Id*.)  Thus, the record establishes that the five unprocessed complaints were filed sometime between May 29 and June 3, 2013, but were unprocessed because plaintiff had already exceeded the two-complaint limit then found in Wis. Admin Code § 310.09(2).

As to the second issue (whether WSPF officials failed to process without good reason), ICE Ray confirmed during the *Pavey* hearing that plaintiff's complaints were unprocessed and not accepted under the health and safety exception to the weekly limit on complaints found in Wis. Admin Code § 310.09(2).[8]  ICE Ray acknowledged that plaintiff filed two grievances on May 29, 2013, which addressed problems that arose while he was in clinical observation.  (Hearing Trans. at 13-14.)  The first one addressed the fact that the water had been shut off in plaintiff's cell, and the second alleged that he was denied medical attention for dehydration from being in the cell with no water.  (*Id*. at 14.)  Ray noted that a third complaint, which alleged that plaintiff was being denied medical attention for chest pains, was accepted under the exception to the limitation on complaints for health issues.  (*Id*. at 14-15.)  Noting further that plaintiff had already filed multiple, other grievances around the same time, Ray explained that the additional grievances were

---

[8] For clarification, there is a distinction between inmate complaints that are accepted, rejected, or returned.  (*See* Dkt. #218, at 8 n.2, citing Wis. Admin. Code § DOC 310.10(2), (5), (8)).  Here, plaintiff's unprocessed complaints were *returned* as unaccepted, as opposed to being rejected.

not accepted and were returned unprocessed to plaintiff with instructions about how to re-file them along with a showing of good cause for exceeding the weekly limit.  (*Id*. at 7-12, 26, 28-29, 41.)

Specifically, Ray testified that, in her opinion, the unprocessed grievances -- which were filed by plaintiff after he had been released from his clinical observation cell -- did not meet the good cause, health and safety exception to the two-grievance-per-week limit because they did not relate to an existing, *immediate* problem or threat to his wellbeing.  (*Id*. at 8, 13.)  Ray further testified that this is the accepted interpretation of the exception by DOC as a whole: "complaints would only be accepted beyond the limit if it was an immediate danger to health or safety or medical."  (*Id*. at 8.)  Ray also countered plaintiff's assertion that she had "confiscated" these unprocessed complaints, rather than returned them, emphasizing that she had "never in 24 years confiscated an inmate's complaint and not returned it to them," adding that she "[does] not confiscate inmate complaints and never ha[s]."  (*Id*. at 36.)

During his testimony, plaintiff acknowledged filing many grievances regarding the conditions of his clinical observation cell during the week of May 29 through June 3, 2013, and that while several were accepted, at least five went unprocessed.  (*Id*. at 47.) Nevertheless, plaintiff maintained that his unprocessed grievances should have been accepted despite the limitation on the number of complaints per week, because they all involved health and safety issues related to the conditions of his confinement in clinical observation. (*Id*. at 47-48.)  Plaintiff also repeated his accusation that Ray failed to return his unprocessed grievances, which he attributed to a personal vendetta against him or part of a conspiracy to interfere with his ability to exhaust administrative remedies.  (*Id*. at 47-

13

48, 53, 56.)  However, when confronted with his inmate request form dated June 4, 2013, objecting to the complaints that he believed were improperly unprocessed because the two-complaint limit didn't apply, plaintiff could not explain how he knew on June 4 that the unprocessed grievances were not accepted for being over the limit if they were, as he claimed, confiscated, rather than returned to him as unprocessed.  (*Id*. at 60-61.)

At the conclusion of the hearing, the court found that Ray was "more credible on the subject of whether those [unprocessed] complaints were returned [for being over the limit]," *and* that plaintiff knew they were not processed for not meeting the health and safety exception, as opposed to being confiscated as part of a "vendetta" or "grand conspiracy" to prevent plaintiff from exhausting his remedies.  (*Id*. at 78.)  Nor does the record otherwise support a finding that the unprocessed complaints were improperly rejected based on an unreasonable interpretation of DOC procedures.

Importantly, there is also precedent upholding ICE Ray's interpretation of the health and safety exception to the two-grievance-per-week limit as applying only to a *current, ongoing* risk or danger to an inmate.  *See Jurjens v. Chatman*, No. 23-cv-88-jdp, 2024 WL 3823025, at *4 (W.D. Wis. Aug. 14, 2024) (upholding this interpretation of the health and safety exception as a reasonable interpretation of the DOC administrative rule); *see also Ajala v. Tom*, No. 13-cv-102-bbc, 2014 WL 905467, at *4 (W.D. Wis. Mar. 7, 2014) (concluding that limiting the health and safety exception to current threats "makes the most sense in the context of the rule," because it "permits prison officials to further the purpose of the rule while providing a safety hatch when it is necessary to prevent imminent harm to the prisoner"), *vacated on other grounds*, 592 F. App'x 526 (7th Cir. Feb. 24, 2015); *Davenport v. Klang*, No. 24-cv-136, 2025 WL 2083208, at *7 (E.D. Wis. July 24, 2025)

14

(finding that "prison staff interpret that exception to only apply to present dangers to incarcerated persons' health and safety, and [the inmate complaint examiner] determined that the plaintiff's complaint about a prior incident did not fall under the exception").

Similarly, the Seventh Circuit has held that "[i]t is up to the administrators to determine what is necessary to handle grievances effectively." *Strong v. David*, 297 F.3d 646, 649 (7th Cir. 2002). Thus, this court has also long held that prison officials are entitled to deference "regarding interpretation and application of their own grievance procedures so long as the procedures provide inmates with a meaningful opportunity to present grievances." *Jones v. Frank*, No. 07-cv-141-bbc, 2008 WL 4190322, at *3 (W.D. Wis. April 14, 2008); *see also Jurgens*, No. 23-cv-88-jdp, 2024 WL 3823025, at * 4 (collecting cases for the same proposition).[9]

---

[9] Plaintiff argues that these cases rest on deference to agency interpretations under *Chevron, U.S.A. Inc. v. Nat. Res. Council, Inc.*, 467 U.S. 837, 843 (1984), which was overruled by *Loper Bright Enters. v. Raimondo*, 603 U.S. 369 (2024), and therefore these cases are no longer valid. (Dkt. #215, at 8; Hearing Tr. at 83.) To the contrary, according deference to prison officials in the adoption and execution of prison policies -- particularly those found in state-run institutions -- is a "bedrock principle of our jurisprudence" that predates *Chevron*. *See McCoy v. Gilbert*, 270 F.3d 503, 509 (7th Cir. 2001) ("Prison administrators . . . should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security.") (citing *Thomas v. Ramos*, 130 F.3d 754, 759 (7th Cir. 1997) (quoting *Bell v. Wolfish*, 441 U.S. 520, 547 (1979)); *see also Turner v. Safley*, 482 U.S. 78, 84-85 (1987) ("Prison administration is, moreover, a task that has been committed to the responsibility of those branches, and separation of powers concerns counsel a policy of judicial restraint. Where a state penal system is involved, federal courts have . . . additional reason to accord deference to the appropriate prison authorities."); *Meachum v. Fano*, 427 U.S. 215, 229 (1976) ("The federal courts do not sit to supervise state prisons, the administration of which is acute interest to the States.") (citations omitted); *Preiser v. Rodriguez*, 411 U.S. 475, 492 (1973) ("[B]ecause most potential litigation involving state prisoners arises on a day-to-day basis, it is most efficiently and properly handled by the state administrative bodies and state courts, which are, for the most part, familiar with the grievances of state prisoners and in a better physical and practical position to deal with those grievances."). Moreover, the Seventh Circuit has continued to afford deference to prison officials over the interpretation of their grievance procedures after *Loper Bright*. *See Henderson v. Aldana*, 2025 WL 722116, at *3 (7th Cir. March 6, 2025) "[W]e give some deference to prison officials' reasonable interpretation of their own procedures.").

"While deferring to how prison officials interpret and apply their own grievance procedures, the remaining question is whether the procedural requirement was reasonably interpreted and applied." *Green v. Manlove*, No. 19-cv-797-wmc, 2021 WL 4439059, at *3 (W.D. Wis. Sept. 28, 2021).  Here, a preponderance of the credible evidence reflects that ICE Ray reasonably interpreted and applied DOC's grievance procedure to exclude plaintiff's unprocessed complaints as over the weekly limit and not subject to the health and safety exception because:  (1) plaintiff had been released from the problematic clinical observation cell; (2) he had already filed several, other complaints about the conditions of his cell and assorted medical issues between May 29 and June 3, 2013, which had been accepted and were being investigated; and (3) the additional, unprocessed complaints did not concern an imminent threat to plaintiff's health or wellbeing.

Finally, Ray also credibly testified that she returned plaintiff's unprocessed complaints for being over the weekly limit, along with information on how to refile those grievances.  Grievance procedures are available if they "are 'capable of use' to obtain 'some relief for the action complained of.'" *Ross*, 578 U.S. at 642 (quoting *Booth v. Churner*, 532 U.S. 731, 738 (2001)).  Here, defendants have credibly shown that WSPF officials did not refuse to process plaintiff's complaints without good reason under DOC procedures limiting the number of grievances and its exception.  Thus, plaintiff was not denied a meaningful opportunity to resubmit those complaints in compliance with prison grievance procedures.  Because plaintiff did not follow those procedures by re-filing any of his unprocessed complaints the following week, he did not exhaust administrative remedies available to him.  Accordingly, defendants have met their burden to show that plaintiff did

16

not properly exhaust available administrative remedies, and his unexhausted claims must again be dismissed without prejudice.

## ORDER

Having determined that plaintiff Raynard Jackson did not exhaust available administrative remedies with respect to any of the unprocessed claims identified by the Seventh Circuit, IT IS ORDERED that those unexhausted claims are DISMISSED WITHOUT PREJUDICE. The clerk of court is directed to enter judgment and close this case accordingly.

Entered this 18th day of March, 2026.

BY THE COURT:

/s/

_____
WILLIAM M. CONLEY
District Judge

17